STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Environmental Division Unit | Docket No. 150-10-14 Vtec |

| Wagner & Guay Permit | DECISION ON THE MERITS |

William and Barbara Wagner and Christopher Guay (Applicants) seek to construct a single-family home and detached garage (the Project) on merged lots 3 and 4 of a previously approved six-lot subdivision located on Dodge Terrace in the Town of Grand Isle, Vermont (the development). Mary Bourassa (Appellant) resides in a single-family home located on lot 2 of the development. On October 1, 2014, the Town of Grand Isle (Town) granted Applicants' zoning permit. On October 14, 2014, Appellant timely appealed the Town's decision to this Court, filing a Statement of Questions consisting of 9 Questions.

On December 22, 2014, Applicants filed a Motion to Dismiss Appellant's Questions 1, 3, 4, 6, 8, and 9. On January 5, 2015, Appellant filed a Motion to Stay the appeal before this Court pending resolution of a civil complaint in the Chittenden Unit of the Vermont Superior Court (Docket No. 1276-12-14 Cncv), seeking a declaratory judgment as to the interpretation of covenants and restrictions in the deeds for lots 2, 5, and 6, and raising claims of fraud and breach of contract against the Wagners relative to those covenants and restrictions. On March 27, 2015, this Court denied Appellant's motion to stay the appeal, and on April 2, 2015 this Court granted Applicants' motion in part and denied it in part, dismissing Appellant's Questions 1, 3, 4, and 6. On July 17, 2015, Appellant filed a Motion for Summary Judgment in her favor on Question 2. Applicants opposed that motion and moved for summary judgment in their favor on all Questions remaining before the Court, Questions 2, 5, 7, 8, and 9. In an August 27, 2015 decision, this Court denied both motions for Summary Judgment leaving Questions 2, 5, 7, 8 and 9 for trial.

The Court held a trial on September 21 and 22, 2015, and conducted a site visit at the subject property on September 22, 2015. Appearing at the site visit and trial were William and Barbara Wagner and their attorneys Matthew S. Stern, Esq. and Robert F. O'Neill; Mary Bourassa and her attorney David E. Bond, Esq.; and Michael Bleau representing himself. The

Town of Grand Isle, through its attorney Amanda Lafferty, attended and participated in the first day of trial but did not attend the site visit or second day of trial.

Based upon the evidence presented at trial, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. On February 21, 1995, the Grand Isle Planning Commission approved Philip and Barbara Wagner's six-lot subdivision on Dodge Terrace in the Town of Grand Isle, Vermont.

2. The size of each of the six lots as they exist today are as follows: lot 1 is 4.72 acres, lot 2 is 1.54 acres, lot 3 is 1.74 acres, lot 4 is 1.94 acres, lot 5 is 10 acres, and lot 6 is 21 acres.

3. A Final Subdivision Plat Plan of the six-lot subdivision dated January 3, 1995, which was approved by the Planning Commission on April 6, 1995 (1995 Plat Plan), is recorded at Map Sleeve Number 21 of the Town's records.

4. Appellant Mary Bourassa owns and resides at lot 2 of the subdivision.

5. Michael Bleau owns and has a house for sale on lot 5 of the subdivision.

6. The Wagners presently own lots 3 and 4 of the subdivision.

7. The Wagners seek to sell lots 3 and 4 to Christopher Guay.

8. Together, the Wagners and Mr. Guay (Applicants) seek approval for adjusting lot lines and merging lots 3 and 4 into a single lot and for building a single-family residence and detached garage thereon.

9. The newly merged lot will be 6.5 acres, which will include about 2.8 acres from lot 6.

10. The locations of the proposed residence and garage are depicted on the unscaled sketch plan accompanying the zoning permit application filed with the Town of Grand Isle in June 2014 (Town Application).

11. Dodge Terrace is a dead-end road running along the south edge of a large open field.

12. The front corners of the proposed house will be located 98 feet and 109 feet from the southern edge of the traveled portion of Dodge Terrace.

13. During the Town's review of the Town Application, Mr. Wagner provided clarifying testimony that the house's setback distances from Dodge Terrace on the sketch plan were distances from the front corners of the proposed house to the southern edge of the traveled way of Dodge Terrace.

14. A row of trees runs parallel to the south side of Dodge Terrace and marks the beginning of a wooded area extending south from the road into a large wetland.

15. The edge of the wooded area is illustrated on the 1995 Plat Plan by a scalloped line south of and parallel to Dodge Terrace. This line is labeled on the plan as "edge of woods" and further defined in the legend as the "Tree Line Boundary."

16. Trees and brush have continued to grow on lots 2–6 over the past twenty years.

17. Note 16 of the 1995 Plat Plan states: "The location of all houses and driveways are for Illustrative purposes only. Actual locations may be selected by the lot owner, as long as all applicable regulations, standards and codes are met, with the provision that the houses for lots 2-6 must be within the tree line."

18. The 1995 Plat Plan depicts proposed in-ground septic systems generally located to the north of the scalloped line and house sites located south of the scalloped line.

19. Ms. Bourassa retained Donald L. Hamlin Consulting Engineers, Inc. to compile a surveyed plan entitled Field vs Zoning Plan Analysis (2015 Hamlin Plat). This plan shows lot boundaries, Applicants' proposed house (located 98 feet and 109 feet from the center of the traveled way of Dodge Terrace), the Tree Line Boundary from the 1995 Plat Plan, the edge of the mature trees' canopy (also known as a "dripline") as surveyed in July 2015, and individually surveyed mature tree trunks.

20. The Wagners retained Krebs & Lansing Consulting Engineers, Inc. to compile a surveyed plan entitled Building Permit Study 3 & 5 Dodge Terrace (2015 Krebs and Lansing Plat).[1] This plan shows lot boundaries, Applicants' proposed house (located 98 feet and 109 feet from the southern edge of the traveled way of Dodge Terrace) and garage, the Tree Line Boundary from the 1995 Plat Plan, the mature tree dripline as surveyed in the field, and individually surveyed mature trees.

21. The only material difference between the 2015 Krebs and Lansing Plat and the 2015 Hamlin Plat is the location of the proposed house.

### Conclusions of Law

Taken together, Questions 2 and 5 address both the location of the tree line established in Note 16 of the 1995 Plat Plan and whether the proposed single-family home is within that tree line. Question 7 asks whether the application should be denied under Grand Isle Zoning

---

[1] Although the title states "3 & 5 Dodge Terrace" the Court assumes that "3 & 4" was intended. Additionally, this plat does not show an attached deck or the detached garage.

Bylaws and Subdivision Regulations section 5.10. Questions 8 and 9 ask whether the application should be denied because Applicants made multiple material misrepresentations of fact in connection with their application, and whether Appellant should be awarded legal fees and costs as a result of any misrepresentations.

## I.     Questions 2 and 5

Question 2 asks whether the application must be denied as inconsistent with the 1995 Plat Plan requiring that houses on lots 2 through 6 be within the tree line. Question 5 asks whether the "tree line" on the 1995 Plat Plan should be interpreted as the edge of canopy or the line mature tree trunks. We first answer Question 5 and use that conclusion to answer Question 2.

Our analysis begins with the importance of the basic premise of finality in land use litigation. It is the function of a subdivision permit "to approve plats of land," and for this reason, "recorded plats necessarily become permit conditions." In re Stowe Club Highlands, 164 Vt. 272, 276 (1995). The failure to appeal a permit condition binds successors in interest. See 24 V.S.A. § 4472(d); In re Hildebrand, 2007 VT 5, ¶ 11, 181 Vt. 568.

The location of the scalloped tree line as illustrated on the approved and recorded 1995 Plat Plan is a condition of the subdivision permit. The Court cannot alter the 1995 Plat Plan. The Court also cannot ignore the location of the trees as they exist today.[2] The surveying experts of both the Wagners and Ms. Bourassa generally agree on the location of the scalloped "tree line boundary" as plotted on the 1995 Plat Plan. Both the 2015 Krebs and Lansing Plat and the 2015 Hamlin Plat depict the scalloped "tree line boundary" in the same general area. Both plats also locate the trunks of existing mature trees in a rough line farther south from Dodge Terrace than the scalloped "tree line boundary." Both plats also locate the mature tree dripline, as it exists in 2015, roughly the same distance north of the scalloped "tree line boundary." Understanding the similarities with each parties' surveyed plat, we consider the parties' dispute over whether the "tree line" on the 1995 Plat Plan should be interpreted as the edge of canopy or the line of mature tree trunks.

---

[2] In the Court's decision on summary judgment we characterize Question 5 as also asking whether the "tree line" in Note 16 is the theoretical tree line surveyed on Map Slide 16 (whether it accurately reflects the real trees or not), or the real-life tree line. In the same decision we also stated "[I]t is the trees themselves that define the tree line, whether they correspond with the plat or not. An error in the plat as to the location of the trees then in existence does not relieve Applicants from the final and binding condition that their building must be built "within the tree line." Following receipt of considerable evidence at trial, the Court continues to conclude that the trees themselves make up the tree line, but, with the additional evidence received at trial, the Court further concludes that the 1995 Plat Plan is not in error.

In construing permit conditions, the Court relies on the normal rules of statutory construction. Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573. It is our principal concern to implement the intent of the drafters, which we ordinarily determine by accepting the plain meaning of the words. Id. Because land-use regulations are in derogation of property rights, any uncertainty must be decided in favor of the property owner. Id.

With these considerations in mind, we evaluate Note 16 on the 1995 Plat Plan requiring that houses constructed on lots 2 through 6 to be "within the tree line." It is clear from the plain language of Note 16 that development must take place within the tree line. Thus, we need to know the intent of the phase "within the tree line." Mr. Wagner testified that the tree-line condition was his creation, as he and his wife designed the original six-lot subdivision. Mr. Wagner testified that he intended that houses be nestled within the trees and have views into the meadow. Furthermore, Mr. Wagner testified that the purpose of the visual buffering from the tree line condition was so that the houses on lots 2 – 6 not appear to be sitting within the center of the meadow.

Both Ms. Bourassa and Mr. Bleau testified that they thought all houses were required to be placed behind or south of mature tree trunks. The basis of their thinking was not related to the 1995 Plat Plan or the phrase "within the tree line," but rather what they thought Mr. Wagner told them when they considered buying lots within the subdivision. Furthermore, Ms. Bourassa argues that allowing the front of the proposed house to sit to the north of the old-growth tree trunks along the edge of the open field would be contrary to the purpose and intent of the requirement that construction occur "within the tree line," because the original old growth trees would not fully screen the house.

Considering the evidence before the Court, we conclude that the scalloped line on the 1995 Plat Plan is not intended to show the location of the trunks of mature trees, but rather the line between the open meadow area and the forested area. Ms. Bourassa's surveying expert, Mr. Hamlin, testified at trial that a scalloped line on a plat typically represents the edge of the open area, or in other words, the division between woods and a field. Mr. Hamlin further explained that field-locating the scalloped "tree line boundary" depicted on the 1995 Plat Plan would have a four or five foot margin of error. He also testified that his survey did confirm that the scalloped "tree line boundary" as depicted on the 1995 Plat Plan was located farther north than the trunks of the mature trees.

We therefore answer Question 5 with the conclusion that the scalloped "tree line" on the 1995 Plat Plan is not the line of mature tree trunks, but rather the line between the open

meadow and the forested area. Using this conclusion, we now consider Question 2, which asks whether the location of the proposed house is within, or south of, the line between the open meadow and the forested area. Based upon the evidence before the Court, Applicants propose that the front corners of the subject house be located 98 feet and 108 feet from the southern edge of the traveled way of Dodge Terrace. The 2015 Krebs & Lansing Plat clearly shows these distances from the southern edge of the traveled way. Although Applicants admit that the measurements on the plan accompanying the application filed with the Town Planning Commission could reasonably be interpreted to show the setback distances from the centerline of Dodge Terrace, Mr. Wagner credibly testified during trial that he provided testimony to the Planning Commission clarifying that measurements were from the edge of the travelled right of way. Measured from the southern edge of the traveled way, the proposed house lies south of the 1995 "tree line boundary" on both experts' surveys.

We therefore conclude that the house complies with the 1995 Plat Plan as the house is located "within the tree line." Based upon the uncontroverted and uniform testimony of both surveying experts, we note that the exact location of the line between the open meadow and the forested areas is difficult to specifically place on a surveyed plat or in the field. This lack of specificity is not material to the issues raised in this matter as the proposed house is located a few feet south of or "within" the scalloped "tree line boundary" as established on the 1995 Plat Plan. Both the 2015 Krebs & Lansing Plat and the 2015 Hamlin Plat clearly show this.

II.     Question 7

Question 7 asks whether the application should be denied under the Town's zoning regulations. See Town of Grand Isle, Vt., Grand Isle Zoning Bylaws and Subdivision Regulations § 5.10 (2012) [hereinafter Bylaws]. Section 5.10 requires a full subdivision hearing process if a proposed boundary adjustment will "substantially change the nature of the development or create new lots." Bylaws § 5.10. Based upon the above findings of fact, we conclude that the proposed boundary adjustment will not substantially change the development or create new lots. The proposed merger will result in the consolidation of lots 3 and 4 along with some acreage of lot 6 into a single lot. Furthermore, lots within the subdivision vary in size with the smallest lot being 1.54 acres and the largest lot being 21 acres. Currently, there are only two houses in the development, Ms. Bourassa's and Mr. Bleau's. The area south of Dodge Terrace is wooded, and the two current houses are partially screened by the surrounding trees. The current proposal will combine lots 3 and 4, and a single-family residence will be constructed on the combined lot within the tree line. The proposal will maintain the rural nature of the

development and result in the construction of only one residence, where two were once possible. Thus, the resulting lot being 6.5 acres with one single-family home, deck, and attached garage will not substantially change the nature of the development or create new lots.

## IV.    Questions 8 & 9

Questions 8 and 9 ask whether the application should be denied because Applicants made multiple material misrepresentations of fact in connection with their application, and whether Appellant should be awarded legal fees and costs as a result any misrepresentations. As discussed in the Court's pretrial decision on motions for summary judgment and as discussed during trial, this Court is generally not concerned with alleged inaccuracies in materials presented to the municipal panel below as this is a de novo hearing. Furthermore, the Court is unlikely to award legal fees absent a statutory authorization to do so or conduct that rises to the level of an intentional abuse of the legal process.

Ms. Bourassa offers that Applicants misrepresented the distance of the house from Dodge Terrace. Although Applicants admit that the measurements on the plan accompanying the application filed with the Town Planning Commission could reasonably be interpreted to show the setback distances from the centerline of Dodge Terrace, Mr. Wagner credibly testified during trial that he provided testimony to the Planning Commission clarifying that measurements were from the <u>edge</u> of the travelled right of way. Based upon the evidence before the Court, Applicants propose that the front corners of the subject house be located 98 feet and 108 feet from the edge of the traveled way of Dodge Terrace. Thus, the Court finds no misrepresentation, before the Town Planning Commission or this Court, regarding setback distances.

Ms. Bourassa also claims the Applicants made material misrepresentations on the zoning application by including the square footage of the garage along with the square footage of the house in the permit fee calculation and that this was done because Applicants intend to turn the garage into a second home. The Court finds no merit to this allegation. The application is clear that the use of the garage is for "storage." Furthermore, Ms. Linda Effel, the zoning administrative officer for the Town at the time the application was filed, testified that it is the correct practice to calculate the permit fee based on the total square footage of both a house and garage when they are built at the same time.

Ms. Bourassa offers no statutory authority for awarding legal fees, and the Court concludes that there is no conduct of the Wagners or Mr. Guay justifying even the consideration of awarding fees.

## Conclusion

For the above reasons, the application to construct a single-family home and detached garage on merged lots 3 and 4 of a previously approved six-lot subdivision on Dodge Terrace in the Town of Grand Isle, Vermont complies with the 1995 Plat Plan condition that the location of houses on lots 2 through 6 be within the tree line. Furthermore, the application does not substantially change the nature of the development or create new lots. The Court concludes that there were no material misrepresentations within the application, and the Court **DENIES** an award of legal fees.

The application to construct a single-family home and detached garage on merged lots 3 and 4 of a previously approved six-lot subdivision located on Dodge Terrace in the Town of Grand Isle, Vermont is approved. Within 30 days of this decision becoming final, Applicants shall file a final Mylar consistent with this decision with the Town Planning Commission for the sole purpose of ensuring compliance with this decision.

This decision does not address compliance with other potentially relevant town and state reviews, including, but not limited to, wetland and wastewater programs.


Electronically signed on October 01, 2015 at 12:05 PM pursuant to V.R.E.F. 7(d).


_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division